| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| RCO Legal, P.S.<br>Jason Kolbe          SBN#  296107<br>2121 Alton Parkway, Suite 110<br>Irvine, CA  92606<br>Phone:  702-854-9965  Fax:  714.277.4899<br>Email:    jkolbe@rcolegal.com<br><br><br>RCO#   230856<br>☐ *Movant appearing without an attorney*<br>☒ *Attorney for Movant* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - Los Angeles**

| In re:<br><br>Jesus Avila Lua<br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 2:16-bk-17876-SK<br>CHAPTER: 11<br><br>**NOTICE OF MOTION AND MOTION**<br>**FOR RELIEF FROM THE AUTOMATIC**<br>**STAY UNDER 11 U.S.C. § 362**<br>**(with supporting declarations)**<br>**(REAL PROPERTY)**<br><br>DATE: 03/22/2017<br>TIME: 8:30 am<br>COURTROOM: 1575 |

**Movant:** HSBC Bank USA, National Association, as Trustee for ACE Securities Corp. Home Equity Loan Trust, Series 2005-HE7, Asset Backed Pass-Through Certificates

1. **Hearing Location:**

   ☒ 255 East Temple Street, Los Angeles, CA 90012     ☐ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367  ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d). If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

   a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c. ☐ An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: 02/13/2017

RCO Legal, P.S.
_____
Printed name of law firm (if applicable)

Jason Kolbe
_____
Printed name of individual Movant or attorney for Movant

/s/ Jason Kolbe
_____
Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 2                           **F 4001-1.RFS.RP.MOTION**

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

    ☒ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

    ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

    ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

    ☐ Other (*specify*):

2. **The Property at Issue (Property):**

    a. Address:

    *Street address:* 1832 Sunnyvale Avenue
    *Unit/suite number:*
    *City, state, zip code:* Walnut Creek, CA 94597

    b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit A___): 2005-0313410-00 Contra Costa

3. **Bankruptcy Case History:**

    a. A ☒ voluntary ☐ involuntary  bankruptcy petition under chapter ☐ 7  ☒ 11 ☐ 12 ☐ 13 was filed on (*date*) __06/14/2016__ .

    b. ☐ An order to convert this case to chapter ☐ 7 ☐ 11 ☐ 12 ☐ 13  was entered on (*date*) _____.

    c. ☐ A plan, if any, was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay:**

    a. ☐ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

    (1) ☐ Movant's interest in the Property is not adequately protected.

        (A) ☐ Movant's interest in the Property is not protected by an adequate equity cushion.

        (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

        (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

    (2) ☒ The bankruptcy case was filed in bad faith.

        (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

        (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

        (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

        (D) ☒ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

        (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition. Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

        (F) ☐ Other (*see attached continuation page*).

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 3                                    **F 4001-1.RFS.RP.MOTION**

(3) ☐ *(Chapter 12 or 13 cases only)*

    (A) ☐ All payments on account of the Property are being made through the plan.
☐ Preconfirmation ☐ Postconfirmation  plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

    (B) ☐ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on *(date)* _____, which is ☐ prepetition ☐ postpetition.

(6) ☒ For other cause for relief from stay, see attached continuation page.

b. ☐ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☒ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    (1) ☒ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

    (2) ☒ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ Other *(specify)*:

6. **Evidence in Support of Motion: *(Declaration(s) MUST be signed under penalty of perjury and attached to this motion)***

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☐ Supplemental declaration(s).

c. ☐ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents. Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit _____.

d. ☐ Other:

7. ☐ **An optional Memorandum of Points and Authorities is attached to this motion.**

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                                           Page 4                                           **F 4001-1.RFS.RP.MOTION**

**Movant requests the following relief:**

1. Relief from the stay is granted under: ☐ 11 U.S.C. § 362(d)(1)  ☐ 11 U.S.C. § 362(d)(2)  ☐ 11 U.S.C. § 362(d)(3).

2. ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3. ☒ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement. Any such agreement shall be nonrecourse unless stated in a reaffirmation agreement.

3. ☐ Confirmation that there is no stay in effect.

4. ☐ The stay is annulled retroactive to the bankruptcy petition date. Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

5. ☐ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

6. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

7. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
   ☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

8. ☒ Relief from the stay is granted under 11 U.S.C. § 362(d)(4): If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

9. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
   ☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

10. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:
   ☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

12. ☒ If relief from stay is not granted, adequate protection shall be ordered.

13. ☐ See attached continuation page for other relief requested.

Date:  02/13/2017

RCO Legal, P.S.
_____
Printed name of law firm (*if applicable*)
Jason Kolbe
_____
Printed name of individual Movant or attorney for Movant

/s/ Jason Kolbe
_____
Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                          Page 5                          F 4001-1.RFS.RP.MOTION

**Continuation 4(a)(6)- For other cause for relief from stay-**

No payments have been received by Creditor on this loan for seventy-six months. The loan remains

contractually due for the October 2010 monthly mortgage payment for a total default of over

$409,499.76. Movant submits that failure to make payments for an extended period of time constitutes

"cause" for relief from stay under *In re Three Tuns, Inc.*, 35 B.R. 110, 311 (Bkrtcy.E.D.Pa. 1983). The

Court in *In re Three Tuns* relied on its prior ruling in *Central Mortgage Co. v. Galbraith (In Re Galbraith)*

19 B.R. 563, 565 (Bkrtcy.E.D. Pa. 1982):

> We conclude that the mortgagee was entitled to relief from the stay under [§362(d)(1)] "for
> cause" because of the fact that the debtors are more than two years in arrears on the mortgage.
> Although the Code was intended to afford financially troubled debtors a breathing spell from
> their creditors, It was not Congress's intent to allow debtors to remain in their homes while
> failing to pay the current mortgage payments for over two years. Such is an abuse of the
> protection given by the Code and is sufficient "Cause" to modify the stay pursuant to §
> 362(d)(1).

# REAL PROPERTY DECLARATION

I, (*print name of Declarant*) Maureen H Spratley _____, declare:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age.  I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (*specify*):

    a. ☐ I am the Movant.

    b. ☐ I am employed by Movant as (*state title and capacity*):

    c. ☒ Other (*specify*): See attached continuation sheet.

2. a. ☐ I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property.  I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant.  These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate.  Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.  The business records are available for inspection and copies can be submitted to the court if required.

    b. ☒ Other (*see attached*):
    See attached continuation sheet.

3. The Movant is:

    a. ☒ Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.  A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit B____.

    b. ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g. mortgage or deed of trust) or (2) is the assignee of the beneficiary.  True and correct copies of the recorded security instrument and assignments are attached as Exhibit A&C__.

    c. ☐ Servicing agent authorized to act on behalf of the:

        ☐ Holder.
        ☐ Beneficiary.

    d. ☐ Other (*specify*):

4. a.  The address of the Property is:

    *Street address*:  1832 Sunnyvale Avenue
    *Unit/suite no.*:
    *City, state, zip code*:  Walnut Creek, CA 94597

    b.  The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:
    Document Recording No.:        2005-0313410-00
    County:                        Contra Costa

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                              Page 6                              **F 4001-1.RFS.RP.MOTION**

5.  Type of property (*check all applicable boxes*):

    a. ☐ Debtor's principal residence    b. ☒ Other residence
    c. ☐ Multi-unit residential    d. ☐ Commercial
    e. ☐ Industrial    f. ☐ Vacant land
    g. ☐ Other (*specify*):

6.  Nature of the Debtor's interest in the Property:

    a. ☐ Sole owner

    b. ☐ Co-owner(s) (*specify*):

    c. ☐ Lienholder (*specify*):

    d. ☐ Other (*specify*):

    e. ☒ The Debtor ☐ did ☒ did not list the Property in the Debtor's schedules.

    f. ☒ The Debtor acquired the interest in the Property by ☒ grant deed ☐ quitclaim deed ☐ trust deed.
       The deed was recorded on (*date*) 8/9/2012___.

7.  Movant holds a ☒ deed of trust ☐ judgment lien ☐ other (*specify*) _____
    that encumbers the Property.

    a. ☒ A true and correct copy of the document as recorded is attached as Exhibit A___.

    b. ☒ A true and correct copy of the promissory note or other document that evidences the Movant's claim is
       attached as Exhibit B___.

    c. ☒ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of
       trust to Movant is attached as Exhibit C___.

8.  Amount of Movant's claim with respect to the Property:

|   |   | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ | $ | $ 734,957.78 |
| b. | Accrued interest: | $ | $ | $ 309,770.78 |
| c. | Late charges | $ | $ | $ 5,180.68 |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ | $ | $ 3,267.67 |
| e. | Advances (property taxes, insurance): | $ | $ | $ 35,171.97 |
| f. | Less suspense account or partial balance paid: | $[    ] | $[    ] | $[0.00    ] |
| g. | TOTAL CLAIM as of (*date*): 01/30/2017 | $ | $ | $ 1,088,348.88 |

    h. ☐ Loan is all due and payable because it matured on (*date*) _____

9.  Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action has occurred*):

    a. Notice of default recorded on (*date*) 5/17/2011___ or ☐ none recorded.

    b. Notice of sale recorded on (*date*) 10/24/2011___ or ☐ none recorded.

    c. Foreclosure sale originally scheduled for (*date*) 11/18/2011___ or ☐ none scheduled.

    d. Foreclosure sale currently scheduled for (*date*) _____ or ☒ none scheduled.

    e. Foreclosure sale already held on (*date*) _____ or ☒ none held.

    f. Trustee's deed upon sale already recorded on (*date*) _____ or ☒ none recorded.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014          Page 7          F 4001-1.RFS.RP.MOTION

10. Attached (*optional*) as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☒ (*chapter 7 and 11 cases only*) Status of Movant's loan:

    a.  Amount of current monthly payment as of the date of this declaration: $ 5,759.98 _____ for the month of January _____ 20 17 .

    b.  Number of payments that have come due and were not made: 76 __. Total amount: $ 401,051.41 _____

    c.  Future payments due by time of anticipated hearing date (*if applicable*):

        An additional payment of $ 5,759.98 _____ will come due on (*date*) 2/1/2017 ____, and on the 1st __ day of each month thereafter. If the payment is not received within N/A __ days of said due date, a late charge of $ N/A _____ will be charged to the loan.

    d.  The fair market value of the Property is $ __N/A_____ , established by:

        (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit _____.

        (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit _____.

        (3) ☐ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _____.

        (4) ☐ Other (*specify*):

    e.  **Calculation of equity/equity cushion in Property:**

        Based upon ☐ a preliminary title report ☐ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | Movant | $ N/A | $ 1,088,348.88 |
| 2nd deed of trust: | | $ | $ |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | | $ | $ |
| Other: | | $ | $ |
| **TOTAL DEBT: $** | | | |

    f.  Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit N/A __ and consists of:

        (1) ☐ Preliminary title report.

        (2) ☐ Relevant portions of the Debtor's schedules.

        (3) ☐ Other (*specify*):

    g.  ☐ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
        I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $_____ and is _____% of the fair market value of the Property.

    h.  ☐ **11 U.S.C. § 362(d)(2)(A) - Equity:**
        By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $_____.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 8                                    **F 4001-1.RFS.RP.MOTION**

i.  ☐ Estimated costs of sale: $_____ (estimate based upon _____% of estimated gross sales price)

j.  ☐ The fair market value of the Property is declining because:

12. ☐ (*Chapter 12 and 13 cases only*) Status of Movant's loan and other bankruptcy case information:

a.  A 341(a) meeting of creditors is currently scheduled for (*or concluded on*) the following date: _____.
A plan confirmation hearing currently scheduled for (or concluded on) the following date:_____.
A plan was confirmed on the following date (*if applicable*): _____.

b.  Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c.  Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d.  Postpetition advances or other charges due but unpaid:                    $
(*For details of type and amount, see Exhibit _____*)

e.  Attorneys' fees and costs:                                                              $
(*For details of type and amount, see Exhibit _____*)

f.  Less suspense account or partial paid balance:                          $[                    ]

TOTAL POSTPETITION DELINQUENCY:                                    $

g.  Future payments due by time of anticipated hearing date (*if applicable*): _____.
An additional payment of $_____ will come due on _____, and on
the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late
charge of $_____ will be charged to the loan.

h.  Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how
applied (if applicable):
$_____  received on (*date*) _____
$_____  received on (*date*) _____
$_____  received on (*date*) _____

i.  ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent.
A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or
13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 9                                    **F 4001-1.RFS.RP.MOTION**

13. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (*date*) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (*date*) _____, which is ☐ prepetition ☐ postpetition.

17. ☒ The bankruptcy case was filed in bad faith:

   a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

   b. ☒ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

   c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

   d. ☐ Other (*specify*):


18. ☒ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

   a. ☒ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

   b. ☐ Multiple bankruptcy cases affecting the Property include:

      1. Case name: _____
         Chapter: _____    Case number: _____
         Date filed: _____    Date discharged: _____    Date dismissed: _____
         Relief from stay regarding the Property ☐ was ☐ was not granted.

      2. Case name: _____
         Chapter: _____    Case number: _____
         Date filed: _____    Date discharged: _____    Date dismissed: _____
         Relief from stay regarding the Property ☐ was ☐ was not granted.

      3. Case name: _____
         Chapter: _____    Case number: _____
         Date filed: _____    Date discharged: _____    Date dismissed: _____
         Relief from stay regarding the Property ☐ was ☐ was not granted.

    ☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

    ☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                          Page 10                          F 4001-1.RFS.RP.MOTION

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

   a ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit_____.

   c ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 7th day of February, 2017.

| | |
|---|---|
| 02/07/2017 | Maureen H Spratley |
| *Date* | *Printed name* |

*Signature*

Vice President Loan Documentation
Wells Fargo Bank, N.A. as servicer for
HSBC Bank USA, National Association,
as Trustee for ACE Securities Corp.
Home Equity Loan Trust, Series 2005-HE7,
Asset Backed Pass-Through Certificates

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                   Page 11                          F 4001-1.RFS.RP.MOTION

**CONTINUATION PAGE**

As an employee of WELLS FARGO BANK, N.A. as servicer for HSBC Bank USA, National Association, as Trustee for ACE Securities Corp. Home Equity Loan Trust, Series 2005-HE7, Asset Backed Pass-Through Certificates ("Wells Fargo"), I have personal knowledge of and am familiar with the types of records maintained by Wells Fargo in connection with the account that is the subject of the Motion (the "Account") and the procedures for creating those types of records. I have access to and have reviewed the books, records and files of Wells Fargo that pertain to the Account and extensions of credit given to the Debtor(s) concerning the property securing such Account. The information in this declaration is taken from Wells Fargo's business records regarding the Account. The records are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; and (b) kept in the course of Wells Fargo's regularly conducted business activities. It is the regular practice of Wells Fargo to create and maintain such record.

403-C.A Central-V3

**Attachment to Declaration**

On or about August 10, 2005, Isabelita G. Puruganan and Ernesto Puruganan ("Borrowers") executed a Promissory Note in the original principal amount of $736,000.00. The indebtedness under the Note is secured by a Deed of Trust recorded against the Property located at 1832 Sunnyvale Avenue, Walnut Creek, CA 94597 ("Property").

On or about May 17, 2011, Movant caused a Notice of Default to be recorded. A Notice of Trustee's Sale was recorded October 24, 2011. The sale was originally set for November 18, 2011.

On January 9, 2012, Movant received a faxed notification of a Bankruptcy filed January 6, 2012 case number 12-10601 by Marcela Salinas ("Notification"). The Notification contained a Trust Transfer Grant Deed purporting to transfer Borrowers' interest in the property to Isabelita G. Puruganan, Ernesto G. Puruganan and Marcela Salinas, without the consent of the Movant. A true and correct copy of the Notification is attached hereto as Exhibit "D." The case was dismissed January 30, 2012.

On August 9, 2012, Movant received a faxed notification of a Bankruptcy filed August 8, 2012 as case number 12-37085 by Jesus Lua ("Second Notification"). The Second Notification contained a Trust Transfer Grant Deed purporting to transfer the Borrowers' interest to Isabelita G. Puruganan, Ernesto G. Puruganan and Jesus Lua without the consent of the Movant. A true and correct copy of the Second Notification is attached hereto as Exhibit "E". The case was dismissed August 27, 2012.

On or about September 12, 2012, Movant received a faxed notification of a Bankruptcy filed September 10, 2012 by Joseph C Smith ("Third Notification"). The Third Notification contained a Trust Transfer Grant Deed purporting to transfer the Borrowers' interest to Isabelita G. Puruganan, Ernesto G. Puruganan and Joseph C. Smith without the consent of the Movant. A true and correct copy of the Third Notification is attached hereto as Exhibit "F."

On or about March 24, 2014, Ernesto Puruganan filed for protection under Chapter 13 of the Bankruptcy Code as case number 14-41268 in the Northern District of California. The case was dismissed April 9, 2014.

On or about February 10, 2016, Jesus Avila Lua filed for protection under Chapter 13 of the Bankruptcy Code as case number 16-11699. The case was dismissed April 15, 2016.

On or about June 14, 2016, Jesus Avila Lua filed for protection under Chapter 11 of the Bankruptcy Code as case number 16-17876. This Bankruptcy is the subject of the instant Motion.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

2121 Alton Parkway, Suite 110
Irvine, CA  92606

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _2/14/17_, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Giovanni Orantes                                      go@gobklaw.com


United States Trustee (LA)                       ustpregion16.la.ecf@usdoj.gov



☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (*date*) _2/14/17_ I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.




☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.




☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_2/14/17_          _Ken O'Hara_                          _Ken O'Hara_
Date                    Printed Name                          Signature

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1

**Case: 2:16-bk-17876-SK**
**In Re Jesus Avila Lua**

2

3

**SERVICE VIA U.S. MAIL:**

4

**CHAMBERS COPY:**
Honorable Sandra R. Klein
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1582
Los Angeles, CA 90012

5

6

7

**DEBTOR:**
Jesus Avila Lua
6922 1/4 Miles Ave
Huntington Park, CA 90255

8

9

10

**BORROWERS:**
Ernesto Puruganan
1832 Sunnyvale Avenue
Walnut Creek, CA 94597

11

12

13

Isabelita Purugana
1832 Sunnyvale Avenue
Walnut Creek, CA 94597

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Certificate of Mailing
Page - 1

28

RCO
Legal, P.S.

2121 Alton Parkway, Suite 110
Irvine, CA 92606
Telephone: 714.277.4888
Facsimile: 714.277.4899

*Deutsche Bank*

**RECORDING REQUESTED BY:**
**ALLIANCE TITLE COMPANY**

RECORDING REQUESTED BY /
RETURN TO:
WMC MORTGAGE CORP.

3100 THORNTON AVENUE

BURBANK, CA 91504

Attn: (WHOLESALE)

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR Clerk-Recorder
**DOC- 2005-0313410-00**

Acct 15- Alliance Title Company
Friday, AUG 19, 2005 08:00:00
MIC      $1.00:MOD     $17.00:REC    $21.00
TCF     $16.00:DRF     $1.00:REF     $0.20

**Ttl Pd   $57.00**                Nbr-0002855770
                                     rrc/R2/1-17

Prepared By:
GREEN QUINCY

WMC MORTGAGE CORP.

6320 CANOGA AVENUE 10TH FL
(MAILROOM)
WOODLAND HILLS, CA 91367

---

Space Above This Line For Recording Data

SERV #:

**DEED OF TRUST**

PURUGANAN
Loan #:
MIN:
PIN:

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated    **August 10, 2005**    together with all Riders to this document.

(B) "Borrower" is   **ISABELITA G. PURUGANAN AND ERNESTO G PURUGANAN, WIFE AND HUSBAND AS JOINT TENANTS.**

Borrower is the trustor under this Security Instrument.

(C) "Lender" is **WMC MORTGAGE CORP.**

Lender is a **Corporation**                          organized and existing under the laws of
**CALIFORNIA**                         . Lender's address is   **P.O. BOX 54089 LOS ANGELES,**
**CA 90054-0089**

(D) "Trustee" is   **WESTWOOD ASSOCIATES, A CALIFORNIA CORPORATION**

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888)679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated   **August 10, 2005**
The Note states that Borrower owes Lender
**Seven Hundred Thirty-Six Thousand And 00/100**
Dollars (U.S. $ **736,000.00**        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **September 1, 2035**

---

CALIFORNIA – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**      Form 3005 1/01
DOCUKCA1                    *(Page 1 of 13)*
DOCUKCA1.VTX 09/15/2004

**A**

313410

(G) "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [x] Adjustable Rate Rider
- [ ] Balloon Rider
- [ ] 1-4 Family Rider
- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Other(s) [specify]
- [ ] Second Home Rider
- [ ] Biweekly Payment Rider

(J) "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "**Escrow Items**" means those items that are described in Section 3.

(N) "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.
As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY                           of      CONTRA COSTA

**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AND KNOWN AS EXHIBIT 'A'.**

313410

which currently has the address of    1832 SUNNYVALE AVENUE
                                      [Street]
WALNUT CREEK                         , California    94597                    ("Property Address"):
        [City]                          [State]      [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from

313410

Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security

313410

Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

313410

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender. If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such

313410

Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005 1/01
DOCUKCA8                                          *(Page 8 of 13)*
DOCUKCA8.VTX 09/15/2004

313410

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b ) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law,

313410

(b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

313410

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____   05/13/05
- Borrower - ERNESTO G PURUGANAN   Date -

_____   8/13/05
- Borrower - ISABELITA G PURUGANAN   Date -

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                     Form 3005 1/01
DOCUKCA12
DOCUKCAC.VTX 09/15/2004                                   (Page 12 of 13)

313410

|Space Below This Line for Acknowledgment|

State of CALIFORNIA
County of CONTRA COSTA

On AUGUST 13, 2005                              , before me, Steve Guest
personally appeared

Isabelita G. Puruganan AND ERNESTO S. Puruganan

~~personally known~~ to me (or proved to me on the basis of satisfactory evidence) to be the person(s), whose name(s) ARE subscribed to the within instrument and acknowledged to me that They executed the same in Their authorized capacity(ies), and that by Their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Notary Public

STEVE GUEST
Commission # 1404828
Notary Public - California
Contra Costa County
My Comm. Expires Mar 10, 2007

My Commission Expires: March 10, 2007

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005 1/01
DOCUKCA13                           (Page 13 of 13)
DOCUKCAD.VTX 09/15/2004

File No. ███████SG313410

# LEGAL DESCRIPTION

All that certain real property in the City of Walnut Creek, County of Contra Costa, State of California, described as follows:

A portion of Lot 15 as delineated upon that certain map entitled "Map of the Hook Estate, Subdivision No. 1", Contra Costa County, California; filed April 18, 1914, in Map Book 11, page 255, in the Office of the County Recorder of the County of Contra Costa, State of California, described as follows:

Commencing at the southwest corner of Lot 15; thence running along westerly line of Lot 15, north 0° 09' 30" west 428.27 feet to the northerly line of 15; thence along the northerly line of said Lot, north 89° 30' east 101.76 feet to a point on said lot line; thence leaving said lot line crossing said Lot 15, south 0° 09' 30" east 428.27 feet to the southerly line of Lot 15; thence along said southerly lot line south 89° 30' west 101.76 feet to the southwest corner of Lot 15 and to the point of commencement.

EXCEPTING THEREFROM:

The parcel of land described as Parcel One in the Deed from D. Baca to D.E. Baca, recorded August 6, 1964, Book 4676, OR, Page 463.

ALSO EXCEPTING THEREFROM:

The parcel of land described as Parcel One in the Deed from D. Baca to J.A. Baca, recorded May 3, 1966, Book 5112, OR, Page 307.

APN No: 170-260-028

313410

## ADJUSTABLE RATE RIDER
(LIBOR Index - Rate Caps)

PURUGANAN
Loan #
MIN:

Serv #

THIS ADJUSTABLE RATE RIDER is made this 10th    day of  August, 2005    ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed to
Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the
Borrower's Note to  WMC MORTGAGE CORP.

(the "Lender") of the same date and covering the
property described in the Security Instrument and located at:
1832 SUNNYVALE AVENUE, WALNUT CREEK, CA 94597

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY
INTEREST RATE AND MY MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE
MAXIMUM RATE I MUST PAY.

DURING THE FIRST Five            (5  ) YEARS, INTEREST ONLY
PAYMENTS WILL BE REQUIRED TO BE MADE.  THIS MEANS THAT THE
REGULAR MONTHLY PAYMENT WILL NOT REDUCE THE AMOUNT I OWE
DURING THE FIRST Five            (5  ) YEARS OF MY LOAN.
YOUR INTEREST RATE MAY CHANGE DURING THE 'INTEREST ONLY
PERIOD' EVERY 6 MONTHS BEGINNING AFTER THE FIRST CHANGE DATE
AS DESCRIBED IN SECTION 4 OF THE NOTE.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

### A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of  6.275    %. The Note provides for changes in the interest rate
and the monthly payments, as follows:

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates

The interest rate I will pay may change on the first day of  September, 2007        and
on that day every 6th    month thereafter. Each date on which my interest rate could change is called
a "Change Date."

DOCUNGT1
DOCUMGD1.VTX 07/09/2004        (page 1 of 3 pages)

313410

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Six** percentage point(s) ( **6.000** %) to the Current Index for such Change Date. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.

During the first **Five** ( **5** ) years after loan closing ("interest-only period"), the Note Holder will determine the amount of the monthly payment that would be sufficient to pay accrued interest only on the unpaid principal balance. This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the "interest-only period" unless I make a voluntary prepayment of principal during such period. If I make a voluntary prepayment of principal during the "interest-only period," my payment amount for subsequent payments during the "interest-only period" will be reduced to the amount necessary to pay interest at the then current interest rate on the remaining unpaid principal balance.

At the end of the "interest-only period" and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I will owe at that Change Date in substantially equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment. After the end of the "interest-only period," my payment amount will not be adjusted due to voluntary principal payments until the next Change Date.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **9.275** % or less than **6.275** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **12.775** % or less than **6.275** %

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred)

313410

without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____  08/13/05
- Borrower - ERNESTO G PURUGANAN - Date -

_____  8/13/05
- Borrower - ISABELITA G PURUGANAN - Date -

**END OF DOCUMENT**



NOV 18 2013

# ADJUSTABLE RATE NOTE
### (LIBOR Index - Rate Caps)

PURUGANAN
Loan
MIN:

Servicing Number: ▮▮▮▮

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

**DURING THE FIRST Five** ( 5.000 ) **YEARS, INTEREST ONLY PAYMENTS WILL BE REQUIRED TO BE MADE. THIS MEANS THAT THE REGULAR MONTHLY PAYMENT WILL NOT REDUCE THE AMOUNT I OWE DURING THE FIRST Five** ( 5.000 ) **YEARS OF MY LOAN.**

August 10, 2005          WALNUT CREEK          California
[Date]                   [City]               [State]

1832 SUNNYVALE AVENUE, WALNUT CREEK, CA 94597

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 736,000.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **WMC MORTGAGE CORP.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **6.275** %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay interest and, following the "interest-only period" described below, principal by making a payment every month.

I will make my monthly payments on the **1st** day of each month beginning on **October 1 2005**. I will make payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on **September 1, 2035**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **6501 IRVINE CENTER DRIVE, IRVINE, CA 92618** or at a different place if required by the Note Holder.

**(B) Amount of My Monthly Payment**

Each of my initial monthly payments will be in the amount of U.S. $3,848.67. This payment amount may change. I will make payments of interest only on the entire unpaid principal balance every month for the **Sixty** ( 60 ) payments due under this Note (the "interest-only period"). Following the interest-only period, I will pay principal and interest by making payments every month thereafter in an amount sufficient to fully amortize and repay the unpaid principal balance of the Note over the then-remaining term of the Note in substantially equal monthly payments, based upon the then in effect interest rate from time to time.

DOCUNSP1
WMCDNSP1.VTX  07/09/2004

Page 1 of 5

B



**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the first day of **September, 2007**      , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index." If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Six**                               percentage point(s) ( **6.000** %) to the Current Index for such Change Date. The Note Holder will then round the result of the addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.

During the "interest-only period," the Note Holder will determine the amount of the monthly payment that would be sufficient to pay accrued interest only on the unpaid principal balance. This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the "interest-only period" unless I make a voluntary prepayment of principal during such period. If I make a voluntary prepayment of principal during the "interest-only period," my payment amount for subsequent payments during the "interest-only period" will be reduced to the amount necessary to pay interest only at the then current interest rate on the remaining unpaid principal balance.

At the end of the "interest-only period" and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal balance that I will owe at that Change Date in substantially equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment. After the end of the "interest-only period," my payment amount will not be adjusted due to voluntary principal payment until the next Change Date.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **9.275** % or less than **6.275** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One**                                        (**1.000** %) from the rate of interest I have been paying for the preceding **6**            months. My interest rate will never be greater than **12.775** % or less than **6.275** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my prepayment to the accrued and unpaid interest on the prepayment amount before

applying my prepayment to reduce the principal amount of the Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of Interest for the first **Sixty** ( **60** ) payments, and **5.000** % of my overdue payment of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver by Note Holder

Even if, at a time I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security

Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

- Borrower - ERNESTO G PURUGANAN - Date -    08/13/05

- Borrower - ISABELITA G PURUGANAN - Date -    8/13/05

Pay to the order of

without recourse

Jessica Fuentes
Assistant Secretary
WMC Mortgage Corp.

*[Sign Original Only]*

# ADDENDUM TO NOTE

## PREPAYMENT PENALTY - FIRST (24   ) MONTHS OF NOTE

Serv #  ▮▮▮▮▮                                              Loan #:  ▮▮▮▮▮

This addendum is made this   **10th**   day of   **August, 2005**                          and is
incorporated into and shall be deemed to amend and supplement the Note of the same date given by the undersigned (the
"Borrower") to   **WMC MORTGAGE CORP.**

(the "Lender") covering the property described in the Security Instrument and located at:

**1832 SUNNYVALE AVENUE WALNUT CREEK, CA 94597**

[Property Address]

To the extent that the provisions of this Prepayment Note Addendum (the "Addendum") are inconsistent with the
provisions of the Security Instrument and/or the Note, the provisions of this Addendum shall prevail over and shall supercede
any such inconsistent provisions of the Security Instrument and/or the Note.

Section  5   of the Note is amended to read in its entirety as follows:

## BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A prepayment of all of the unpaid
principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial
prepayment."

Except as provided below, I may make a full or partial prepayment at any time. If I make any partial prepayment, I
must still make each later payment as it becomes due and in the payment amount established in accordance with the provisions
of the Note. I may make a full prepayment at any time. However, if within the first   **Twenty-Four**
months after the execution of the Note, I make any prepayment(s) within any 12-month period the total amount of which
exceeds   **Twenty**              percent (   **20.000**    %) of the original principal amount of this loan, I will
pay a prepayment charge in an amount equal to the payment of   **Six**              (  **6**    ) months' advance
interest on the amount by which the total of my prepayments(s) within that 12-month period exceeds   **Twenty**
percent (   **20.000**    %) of the original principal amount of the loan.

_Ernesto S. Puruganan_                08/13/05
- Borrower - **ERNESTO G PURUGANAN** - Date -

_Isabelita H. Puruganan_          8/13/05
- Borrower - **ISABELITA/G PURUGANAN** - Date -

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

DEFAULT ASSIGNMENT
WELLS FARGO BANK, N.A.
MAC: X9999-018
PO BOX 1629
MINNEAPOLIS, MN  55440-9790

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
**DOC- 2011-0173363-00**

Check Number
**Wednesday, AUG 24, 2011 14:40:43**
MOD    $2.00:REC    $12.00:FTC    $1.00
DAF    $2.70:REF    $0.30:RED    $1.00
ERD    $1.00:

Tt1 Pd    $20.00      Rcpt # 0001007029

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Contra Costa, California
SELLER'S SERVICING #                    "PURUGANAN"

MERS #:                    IS #: 1-888-679-6377

Prepared By: Emily Hoover, WELLS FARGO BANK, N.A. 1000 BLUE GENTIAN RD., EAGAN, MN  55121 (651)605-3792

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WMC MORTGAGE CORP., ITS SUCCESSORS AND ASSIGNS hereby grants, assigns and tranfers to HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR ACE SECURITIES CORP. HOME EQUITY LOAN TRUST, SERIES 2005-HE7, ASSET BACKED PASS-THROUGH CERTIFICATES at 636 GRAND REGENCY BLVD., BRANDON, FL 33510 all beneficial interest under that certain Deed of Trust dated 08/10/2005 , in the amount of $736,000.00, executed by ISABELITA G. PURUGANAN AND ERNESTO S. PURUGANAN, WIFE AND HUSBAND AS JOINT TENANTS. to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC , AS NOMINEE FOR WMC MORTGAGE CORP., ITS SUCCESSORS AND ASSIGNS and Recorded: 08/19/2005  as Instrument No.: 2005-0313410-00 in the County of Contra Costa, State of California.

Therein described or referred to, in said Deed of Trust, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

In witness whereof this instrument is executed.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WMC MORTGAGE CORP., ITS SUCCESSORS AND ASSIGNS
On _8/22/11_

_YEN NGUYEN_ , Assistant Secretary

C

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF Minnesota
COUNTY OF Dakota

On __8/22/2011__, before me, _Robert W. Caruso_, a Notary Public in and for Dakota in the
State of Minnesota, personally appeared __Yen Nguyen__, Assistant Secretary, personally known to
me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_Robert W. Caruso_

Notary Expires: 1/31/2014

```
ROBERT W. CARUSO
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2014
```
(this area for notarial seal)

END OF DOCUMENT

ATTENTION:  NORTHWEST TRUSTEE SERVICES INC

January 09, 2012

RE:  TSN 7777.16230
Property:  1832 Sunnyvale Ave.
           Walnut Creek, CA. 94597

To whom it may concern,

I am requesting for a postponement on the Trustee Sale
date on **JANUARY 10, 2012** on the above Property.  I
am attaching the Bankruptcy filing on the above
property.

                        Thank you very much
                        ISABELITA G.PURUGANAN

D

Monday, January 09, 2012

**PRELIMINARY CHANGE OF OWNERSHIP REPORT**
(To be completed by transferee [buyer] prior to transfer of subject property
in accordance with Section 480.3 of the Revenue and Taxation Code.)
THIS REPORT IS NOT A PUBLIC DOCUMENT

| For Recorders Use Only |
|---|

Seller/Transferor: Isabelita Puruganan & Ernesto Puruganan

Buyer/Transferee: THE ISABELITA G. PURUGANAN REVOCABLE TRUST

Assessor's Parcel Number(s): 170-200-028

| For Assessor's Use Only |
|---|
| Con ___ |
| Adj ___ |

Property Address or Location: 1832 Sunnyvale Ave. Walnut Creek. CA.94597

Mail Tax Information To:   Name   Isabelita Puruganan

Address   1832 Sunnyvale Ave.

Phone Number (8 a.m.-5 p.m.):   Walnut Creek   CA. 94597

A Preliminary Change in Ownership Report must be filed with each conveyance in the County Recorder's office for the county where the property is located, this particular form may be used in all 58 counties of California.

NOTICE: A lien for property taxes applies to your property on January 1 of each year for the taxes owing in the following fiscal year, July 1 through June 30. One-half of these taxes is due November 1, and one-half is due February 1. The first installment becomes delinquent on December 10, and the second installment becomes delinquent on April 10. One tax bill is mailed before November 1 to the owner of record. IF THIS TRANSFER OCCURS AFTER JANUARY 1 AND ON OR BEFORE DECEMBER 31, YOU MAY BE RESPONSIBLE FOR THE SECOND INSTALLMENT OF TAXES DUE FEBRUARY 1.

The property which you acquired may be subject to a supplemental assessment in an amount to be determined by the San Bernardino County Assessor. For further information on your supplemental roll obligation, please call the San Bernardino County Assessor at (909) 387-8307.

**PART I: TRANSFER INFORMATION**   Please answer all questions

YES NO

☐ ☑ A. Is this transfer solely between husband and wife? (Addition of a spouse, death of a spouse, divorce settlement, etc.)

☐ ☑ B. Is this transaction only a correction of the name(s) of the person(s) holding title to the property? (For example, a name change upon marriage)?

☐ ☑ C. Is this document recorded to create, terminate, or reconvey a lender's interest in the property?

☐ ☑ D. Is this transaction recorded only as a requirement for financing purposes or to create, terminate or reconvey a security interest (e.g., cosignor)?

☐ ☑ E. Is this document recorded to substitute a trustee under a deed of trust, mortgage, or other similar document?

☐ ☑ F. Did this transfer result in the creation of a joint tenancy in which the seller (transferor) remains as one of the joint tenants?

☐ ☑ G. Does this transfer return property to the person who created the joint tenancy (original transferor)?

H. Is this transfer of property:

☐ ☑ 1. to a trust for the benefit of the ☐ Grantor ☐ Grantor's spouse

e. I are/we are still eligible for the Homeowners Exemption and wish to keep this exemption. ☐ Yes ☐ No

☑ ☐ 2. to a trust revocable by the transferor?

☑ ☐ 3. to a trust from which the property reverts to the grantor within 12 years?

☐ ☑ I. If the property is subject to a lease, is the remaining lease term 35 years or more including written options?

☐ ☑ *J. Is this a transfer between parent(s) and child(ren)? ☐ or from grandparent(s) to grandchild(ren)? ☐

☐ ☑ *K. Is this transaction to replace a principal residence by a person 55 years of age or older? Within the same county? ☐ Yes ☐ No

☐ ☑ *L. Is this transaction to replace a principal residence by a person who is severely disabled as defined by Revenue and Taxation Code section 69.5?
Within the same county? ☐ Yes ☐ No

*If you checked "yes" to J. K or L, you may qualify for a property tax reassessment exclusion, which may result in lower taxes on your property. Failure to file a claim results in the reassessment of the property.

Please provide any other information that would help the Assessor to understand the nature of the transfer.

IF YOU HAVE ANSWERED "YES" TO ANY OF THE ABOVE QUESTIONS EXCEPT J, K or L PLEASE SIGN AND DATE.
OTHERWISE COMPLETE BALANCE OF FORM.

**PART II: OTHER TRANSFER INFORMATION**

A. Date of Transfer, if other than recording date _____

B. Type of transfer. Please check appropriate box.

☐ Purchase ☐ Foreclosure ☑ Gift ☐ Trade or Exchange ☐ Merger, Stock or Partnership Acquisition

☐ Contract of Sale – Date of Contract _____

☐ Inheritance – Date of Death _____   Other (Please Explain) _____

☐ Creation of Lease ☐ Assignment of a Lease ☐ Termination of a Lease ☐ Sale/Leaseback

Date lease began _____

Original term in years (including written options) _____

Remaining term in years (including written options) _____

C. Was only a partial interest in the property transferred? ☐ Yes ☐ No

If "Yes", indicate the percentage transferred _____ %

Page 1 of 2

Monday, January 09, 2012

# PRELIMINARY CHANGE OF OWNERSHIP REPORT

Please answer, to the best of your knowledge, all applicable questions, sign and date. If a question does not apply, indicate with "N/A".

**PART III: PURCHASE PRICE AND TERMS OF SALE**

A. CASH DOWN PAYMENT OR Value of Trade or Exchange (excluding closing costs) — Amount $ _____

B. FIRST DEED OF TRUST @ ____ % interest for ____ years. Payments per Month= $ _____ (Principal & Interest only) — Amount $ _____

- [ ] FHA (____ Discount Points)
- [ ] Conventional
- [ ] VA (____ Discount Points)
- [ ] Cal-Vet
- [ ] Fixed Rate
- [ ] Variable Rate
- [ ] All Inclusive D.T. ($_____ Wrapped)
- [ ] Loan Carried by Seller
- [ ] New Loan
- [ ] Assumed Existing Loan Balance
- [ ] Bank or Savings & Loan
- [ ] Finance Company

Balloon Payment [ ] Yes [ ] No   Due Date _____   Amount $ _____

C. SECOND DEED OF TRUST @ ____ % interest for ____ years. Payments per Month= $ _____ (Principal & Interest only) — Amount $ _____

- [ ] Bank or Savings and Loan
- [ ] Loan Carried by Seller
- [ ] Fixed Rate
- [ ] Variable Rate
- [ ] New Loan
- [ ] Assumed Existing Loan Balance

Balloon Payment [ ] Yes [ ] No   Due Date _____   Amount $ _____

D. OTHER FINANCING: Is other financing involved not covered in (b) or (c) above? [ ] Yes [ ] No

Type _____ @ ____ % interest for ____ years. Payments per Month= $ _____ (Principal & Interest only) Amount $ _____

- [ ] Bank or Savings and Loan
- [ ] Loan Carried by Seller
- [ ] Fixed Rate
- [ ] Variable Rate
- [ ] New Loan
- [ ] Assumed Existing Loan Balance

Balloon Payment [ ] Yes [ ] No   Due Date _____   Amount $ _____

E. WAS AN IMPROVEMENT BOND ASSUMED BY THE BUYER? [ ] Yes [ ] No   Outstanding Balance: Amount $ _____

F. TOTAL PURCHASE PRICE (or acquisition price, if traded or exchanged, include real estate commission if paid.)
Total items A through E: **$ 0.00**

G. PROPERTY PURCHASED [ ] Through a broker [ ] Direct from Seller [ ] From a family member [ ] Other (explain) _____

If purchased through a broker, provide broker's name and phone number. _____

Please explain any special terms, seller concessions or financing and any other information that would help the Assessor understand the purchase price and terms of sale.

**PART IV: PROPERTY INFORMATION**

A. TYPE OF PROPERTY TRANSFERRED:

- [x] Single Family Residence
- [ ] Multiple Family Residence (no. of units _____ )
- [ ] Commercial/Industrial
- [ ] Other (Description: _____ )
- [ ] Agricultural
- [ ] Co-op/Own-your-own
- [ ] Condominium
- [ ] Timeshare
- [ ] Manufactured Home
- [ ] Unimproved Lot

B. IS THIS PROPERTY INTENDED AS YOUR PRINCIPAL RESIDENCE? [ ] Yes [ ] No

If yes, enter date of occupancy _____ Month  Day  Year   or intended occupancy _____ Month  Day  Year

C. IS THIS PERSONAL PROPERTY INCLUDED IN PURCHASE PRICE (i.e. furniture, farm equipment, machinery, etc.)
(other than a manufactured home subject to local property tax)? [ ] Yes [x] No

If yes, enter the value of the personal property included in the purchase price $ _____ (Attach itemized list of personal property)

D. IS A MANUFACTURED HOME INCLUDED IN PURCHASE PRICE? [ ] Yes [x] No

If yes, how much of the purchase price is allocated to the manufactured home? $ _____

Is the manufactured home subject to local property tax? [ ] Yes [ ] No   What is the Decal Number? _____

E. DOES THE PROPERTY PRODUCE INCOME? [ ] Yes [x] No   If yes, the income is from:

- [ ] Lease/Rent
- [ ] Contract
- [ ] Mineral Rights
- [ ] Other -- Explain _____

F. WHAT WAS THE CONDITION OF PROPERTY AT THE TIME OF SALE?

- [ ] Good
- [x] Average
- [ ] Fair
- [ ] Poor

Please explain the physical condition of the property and provide any other information (such as restrictions, etc.) that would assist the Assessor in determining the value of the property.

I certify that the foregoing is true, correct and complete to the best of my knowledge and belief.

Signed _____   NEW OWNER / CORPORATE OFFICER   Date 01/09/12

Please print Name of New Owner / Corporate Officer _____

Phone Number where you are available from 8:00 a.m. -- 5:00 p.m. _____

(NOTE: The Assessor may contact you for further information)

If a document evidencing a change of ownership is presented to the recorder for recordation without the concurrent filing of a preliminary change of ownership report, the recorder may charge an additional recording fee of twenty dollars ($20.00).

Monday, January 09, 2012                                    Page 4

RECORDING REQUESTED BY:
Isabelita G. Puruganan AS CO-TRUSTEE

WHEN RECORDED MAIL TO
AND MAIL TAX STATEMENTS TO:
Isabelita G. Puruganan
1832 Sunnyvale ave.
Walnut Creek, CA. 94597

APN No: 170-280-028

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
DOC- 2012-0005004-00

Monday, JAN 09, 2012 15:36:03
S37    $10.00:CPY      $1.00:MOD      $1.00
REC    $11.00:FTC      $0.00:RED      $1.00
ERD    $1.00:

Ttl Pd    $25.00      Rcpt # 0001143566
                              rre/R9/1-1

# TRUST TRANSFER GRANT DEED

The undersigned grantor declares under penalty of perjury that the following is true and correct:  Gift
        There is no consideration for this transfer:
        This conveyance transfer the Grantor's interest into a revocable trust for the benefit of Grantor
and Grantor's issue, and is exempt from transfer tax. Zero

GRANTORS, ISABELITA G. PURUGANAN AND ERNESTO G. PURUGANAN hereby GRANT(s) to
ISABELITA G. PURUGANAN, ERNESTO G. PURUGANAN AND MARCELA SALINAS AS CO-
TRUSTEE OF THE ISABELITA G. PURUGANAN REVOCABLE TRUST.

the following described real property in the City of Walnut Creek, County of Contra Costa State of
California, described as:

HOOK ESTATE SUBN #1 POR LOT 15, IN THE CITY OF WALNUT CREEK, COUNTY OF CONTRA COSTA, STATE
OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 11, PAGE 255 OF MAPS, IN THE OFFICE OF THE
COUNTY RECORDER OF SAID COUNTY

Commonly being known as: 1832 Sunnyvale Ave. Walnut Creek, CA. 94597

Dated:  01/09/12                          _____
                                          Isabelita G. Puruganan

                                          _____
                                          Ernesto G. Puruganan

STATE OF CALIFORNIA        }
COUNTY OF Contra Costa     } S.S.

On Jan 9, 2012 before me, Sandra R Jones, a notary public in and for
said state, personally appeared Isabelita G Puruganan & Ernesto G. Puruganan proved to me on the basis
of satisfactory evidence to be the person(s) whose name(s) is (are) subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that
by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____  (seal)

SANDRA R. JONES
Comm. # 1859366
NOTARY PUBLIC-CALIFORNIA
CONTRA COSTA COUNTY
My Comm. Exp. Jul. 21, 2013

United States Bankruptcy Court
Central District Of California

## Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s) listed below
was filed under Chapter 13 of the United States
Bankruptcy Code, entered on 01/06/2012 at 4:03 PM and
filed on 01/06/2012.



**FILED**
**01/06/2012**

**Marcela Salinas**
11434 State St #D
Lynwood, CA 90262
310-303-0865
SSN / ITIN: xxx-xx-2012

The bankruptcy trustee is:

**Nancy K Curry (TR)**
606 South Olive Street, Suite 950
Los Angeles, CA 90014
213-689-3014

The case was assigned case number 2:12-bk-10601-WB to Judge Julia W. Brand.

In most instances, the filing of the bankruptcy case automatically stays certain collection and
other actions against the debtor and the debtor's property. Under certain circumstances, the stay
may be limited to 30 days or not exist at all, although the debtor can request the court to extend
or impose a stay. If you attempt to collect a debt or take other action in violation of the
Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they
are available at our *Internet* home page www.cacb.uscourts.gov or at the Clerk's Office, 255 East
Temple Street, Los Angeles, CA 90012.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court
setting forth important deadlines.

**Kathleen J. Campbell**
**Clerk, U.S. Bankruptcy**
**Court**



RECORDING REQUESTED BY:
Isabelita G. Puruganan AS CO-TRUSTEE

WHEN RECORDED MAIL TO
AND MAIL TAX STATEMENTS TO:
Isabelita G. Puruganan
1832 Sunnyvale ave.
Walnut Creek, CA. 94597

APN No: 170-260-028

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
DOC- 2012-0191634-00
Thursday, AUG 09, 2012 08:46:10
MOD    $1.00:REC    $1.00:FTC    $0.00
RED    $1.00:ERD    $1.00:
Ttl Pd    $14.00    Rcpt # 0001360839
rrc/R9/1-1

# TRUST TRANSFER GRANT DEED

The undersigned grantor declares under penalty of perjury that the following is true and correct:
    There is no consideration for this transfer:
    This conveyance transfer the Grantor's interest into a revocable trust for the benefit of Grantor and Grantor's issue, and is exempt from transfer tax. Zero

ISABELITA G. PURUGANAN as co-trustee of THE ISABELITA G. PURUGANAN REVOCABLE TRUST, hereby GRANT(s) to ISABELITA G. PURUGANAN, ERNESTO G. PURUGANAN AND JESUS LUA AS CO-TRUSTEE OF THE ISABELITA G. PURUGANAN REVOCABLE TRUST.

the following described real property in the City of Walnut Creek, County of Contra Costa State of California, described as:

HOOK ESTATE SUBN #1 POR LOT 15, IN THE CITY OF WALNUT CREEK, COUNTY OF CONTRA COSTA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 11, PAGE 255 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY

Commonly being known as: 1832 Sunnyvale Ave. Walnut Creek, CA. 94597

Dated: _8/8/12_

_Isabelita B. Puruganan_
Isabelita G. Puruganan/Trustee

STATE OF CALIFORNIA         }
COUNTY OF _Contra Costa_    } S.S.

On _8/8/12_ before me, _J.E. Guerrero Jr_, a notary public in and for said state, personally appeared _Isabelita G. Puruganan_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____    (seal)

J. E. GUERRERO JR.
COMM. #1823668
Notary Public-California
CONTRA COSTA COUNTY
My Comm. Exp. NOV 21, 2012

E

ATTENTION:  NORTHWEST TRUSTEE SERVICES INC

September 10, 2012

RE:  TSN 7777.16230
Property:  1832 Sunnyvale Ave.
           Walnut Creek, CA. 94597


To whom it may concern,

I am requesting for a postponement on the Trustee Sale
date on **September 11, 2012** on the above Property.  I
am attaching the Bankruptcy filing on the above
property.


                          Thank you very much
                          ISABELITA G.PURUGANAN

F

9/10/2012 2:08 PM                                                                 Page 2 of 6

RECORDING REQUESTED BY:
Isabelita G. Puruganan AS CO-TRUSTEE

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
DOC- 2012-0219791-00
Monday, SEP 10, 2012 13:02:28
CER     $4.50:MOD     $2.00:REC     $12.00
FTC     $1.00:RED     $1.00:ERD     $1.00
Ttl Pd  $21.50        Rcpt # 0001393720
                                   rrc/R9/1-2

WHEN RECORDED MAIL TO
AND MAIL TAX STATEMENTS TO:
Isabelita G. Puruganan
1832 Sunnyvale ave.
Walnut Creek, CA. 94597

APN No: 170-260-028

# TRUST TRANSFER GRANT DEED

The undersigned grantor declares under penalty of perjury that the following is true and correct:
  There is no consideration for this transfer:
  This conveyance transfer the Grantor's interest into a revocable trust for the benefit of Grantor
and Grantor's issue, and is exempt from transfer tax. Zero

ISABELITA G. PURUGANAN as co-trustee of THE ISABELITA G. PURUGANAN REVOCABLE
TRUST, hereby GRANT(s) to ISABELITA G. PURUGANAN, ERNESTO G. PURUGANAN AND
JOSEPH C. SMITH AS CO-TRUSTEE OF THE ISABELITA G. PURUGANAN REVOCABLE
TRUST.

the following described real property in the City of Walnut Creek, County of Contra Costa State of
California, described as:

HOOK ESTATE SUBN #1 POR LOT 15, IN THE CITY OF WALNUT CREEK, COUNTY OF CONTRA COSTA, STATE
OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 11, PAGE 255 OF MAPS, IN THE OFFICE OF THE
COUNTY RECORDER OF SAID COUNTY

Commonly being known as: 1832 Sunnyvale Ave. Walnut Creek, CA. 94597

Dated: _09/10/12_

_Ernesto G. Puruganan Trustee_
_Isabelita G. Puruganan_
ISABELITA G. PURUGANAN

STATE OF CALIFORNIA }
COUNTY OF _CONTRA COTA_ } S.S.

On _Sept 10, 2010_ before me, _NIMAR JONS_, a notary public in and for
said state, personally appeared _ERNESTO G. PURUGANAN_, who proved to me on the basis
of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that
by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

SANDRA R. JONES
Comm. # 1868000
NOTARY PUBLIC-CALIFORNIA
My Comm. Exp. Jul. 5, 2013

RECORDER'S MEMO

Index _ISABELITA G. PURUGANAN_
As sole GRANTOR/GRANTEE

# CALIFORNIA CERTIFICATE OF ACKNOWLEDGEMENT

STATE OF CALIFORNIA

COUNTY OF _Contra Costa_ ss.

ON _Sept 10, 2012_ BEFORE ME, _Sandra R. Jones_ NOTARY PUBLIC
   Date                         Name

PERSONALLY APPEARED _Imadeuta G. Puragtalan_

WHO PROVED TO ME ON THE BASIS OF SATISFACTORY EVIDENCE
TO BE THE PERSON (S) WHOSE NAME (S) IS/ARE SUBSCRIBED TO
THE WITHIN INSTRUMENT AND ACKNOWLEDGED TO ME THAT
HE/SHE/THEY EXECUTED THE SAME IN HIS/HER/THEIR
AUTHORIZED CAPACITY (IES) AND THAT BY HIS/HER/THEIR
SIGNATURE (S) ON THE INSTRUMENT THE PERSON (S), OR THE
ENTITY UPON BEHALF OF WHICH THE PERSON (S) ACTED,
EXECUTED THE INSTRUMENT.

I certify under PENALTY OF PERJURY under the laws of the
State of California that the foregoing paragraph is true and
correct.

WITNESS MY HAND AND OFFICIAL SEAL.

_____
Signature of Notary

SANDRA R. JONES
COMM. # 1359663
NOTARY PUBLIC-CALIFORNIA
CONTRA COSTA COUNTY
My Comm. Exp. Jul. 31, 2013

---

## OPTIONAL INFORMATION

*The information below is not required by law, but it may prove to be important to persons relying on the document and could prevent fraudulent removal and reattachment of this form to some other document.*

**DESCRIPTION OF ATTACHED DOCUMENT**

TITLE OR TYPE OF
DOCUMENT: _Trust Transfer Grant Deed_

DOCUMENT DATE: _9/10/12_      NUMBER OF PAGES _4_

SIGNER (S) OTHER THAN NAMED ABOVE: _____

**CAPACITY (IES) CLAIMED BY SIGNER (S)**

SIGNER'S NAME: _____     SIGNER'S NAME: _____

___ INDIVIDUAL                     ___ INDIVIDUAL
___ CORPORATE OFFICER         ___ CORPORATE OFFICER
    TITLE (S): _____                       TITLE (S): _____
___ PARTNER                             ___ PARTNER
    ___ LIMITED ___ GENERAL        ___ LIMITED ___ GENERAL
___ ATTORNEY-IN-FACT           ___ ATTORNEY-IN-FACT
___ TRUSTEE                            ___ TRUSTEE
___ GUARDIAN OR CONSERVATOR    ___ GUARDIAN OR CONSERVATOR
___ OTHER: _____                      ___ OTHER: _____

SIGNER IS REPRESENTING: _____     SIGNER IS REPRESENTING: _____

RIGHT THUMBPRINT                    RIGHT THUMBPRINT
OF SIGNER                            OF SIGNER

A-24 HOUR NOTARY SERVICE • 2709 El Camino Av. Sacramento, CA 95821 • Rev 12-01-2007 • FOR REORDERS: CALL TOLL-FREE 800-538-7233

I hereby certify that this is a true
and correct copy of the official public
record on file in this office

ATTEST: SEP 1 0 2012

STEPHEN L. WEIR
County Clerk-Recorder

By_____ Deputy Clerk

United States Bankruptcy Court
Central District Of California

## Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s) listed below
was filed under Chapter 13 of the United States
Bankruptcy Code, entered on 09/10/2012 at 07:12 AM
and filed on 09/10/2012.

FILED
09/10/2012
07:12 AM

**Joseph C Smith**
663 Terylynn Place
Long Beach, CA 90807
SSN / ITIN: xxx-xx-8723
*aka* **Joseph Carruth Smith**

The case was filed by the debtor's attorney:        The bankruptcy trustee is:

**Anerio V Altman**                     **Kathy A Dockery (TR)**
Law Office of Anerio V Altman           700 S. Flower Street, Suite 1950
27031 Vista Terrace #209                Los Angeles, CA 90017
Lake Forest, CA 92630                   (213) 996-4400
949-218-2002

The case was assigned case number 2:12-bk-40701-NB to Judge Neil W. Bason.

In most instances, the filing of the bankruptcy case automatically stays certain collection and
other actions against the debtor and the debtor's property. Under certain circumstances, the stay
may be limited to 30 days or not exist at all, although the debtor can request the court to extend
or impose a stay. If you attempt to collect a debt or take other action in violation of the
Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they
are available at our *Internet* home page www.cacb.uscourts.gov or at the Clerk's Office, 255 East
Temple Street,, Los Angeles, CA 90012.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court
setting forth important deadlines.

**Kathleen J. Campbell**
**Clerk, U.S. Bankruptcy**
**Court**

